(No. 2252—

JULIA GYENES, ADMX. OF THE ESTATE OF ANDREW GYENES, Deceased, AND JULIA GYENES, INDIVIDUALLY, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 11, 1936.*

JOHN W. PREIHS AND CARL PREIHS, for claimants: JOHN W. FRIBLEY, of counsel.

OTTO KERNER, Attorney General; CARL DIETZ, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

On September 18, 1932 Louis L. Emmerson, as Governor of the State of Illinois, in compliance with the request of the Sheriff of Christian County directed the mobilization of

Company E, 130th Infantry of the Militia of Illinois, to go into Christian County to aid in preserving order. Under orders from Adjutant General Black, the Company, under command of Capt. Carl H. Meacham, went to Christian County, with instructions to report to the Sheriff of that County. The Company was in command of Capt. Carl H. Meacham. The latter reported to the Sheriff, no martial law was declared, but the Sheriff directed Capt. Meacham, as such commanding officer, to assist in maintaining order in said county and for that purpose to patrol any part of the county in such manner, as such commanding officer might deem proper.

Between 5:30 and 6:00 o'clock on the afternoon of October 13, 1932 Corporal Russell M. Myers, and two other members of the Ill. National Guard were on active duty and were patrolling the streets in the Village of Tovey in said county when their car was signalled to stop by a Mr. and Mrs. Miller in front of the Miller home. Andrew Gyenes was standing in the front yard at the residence of a Mr. Fordor who lived next door to the Miller home. There was a fence across the front of the Fordor property between Gyenes and the street and he was standing some five or six feet inside the yard, the gate to which was closed. Mr. Miller had had a dispute with Gyenes several days previously. Miller informed the guardsmen of this dispute and that Gyenes had called him a "scab," and he requested that the militiamen arrest Gyenes. Corporal Myers then walked over near the gate of the fence which surrounded the yard in which Gyenes was standing and ordered him to consider himself under arrest. The gate was closed and Gyenes was standing four or five feet from the fence. Gyenes refused to consider himself under arrest and informed Corporal Myers that the latter had no right to arrest him without a warrant and that he would not go with Corporal Myers, whereupon Myers said "I told him if he refused again I was going to shoot—that I would count three —that I did count three—and about the time of the third count Gyenes took a step forward and raised his arm toward me and I fired." The bullet from Corporal Myers' rifle entered the body of Andrew Gyenes and from that bullet wound the latter soon thereafter died.

Andrew Gyenes was an able-bodied man, about forty-five (45) years of age, by occupation a coal miner, and lived

with and contributed his earnings to the support of his wife and children. He left surviving him, Julia Gyenes who files this claim as his surviving widow and as administratrix of his estate—Marie Gyenes, a daughter, aged nineteen (19) years—Elizabeth Gyenes, a daughter, aged seventeen (17) years—and Andrew Gyenes, a son, aged nine (9) years, all of whom, according to the stipulation herein filed, were dependent upon their father for support.

No martial law had been declared in Christian County prior to or at the time Corporal Myers shot and killed Andrew Gyenes. Corporal Myers had no warrant for the arrest of Gyenes and there was at the time of the shooting no complaint for a warrant filed with any court. It is further stipulated in the record that the deceased had violated no law in the presence of the Military Patrol or Corporal Myers and that the deceased was within his authority in demanding that no arrest be made without a warrant.

Claimant seeks an award of Ten Thousand ($10.000.00) Dollars as the surviving wife of Andrew Gyenes, because of his unlawful and unwarranted killing, and seeks the further sum of Ten Thousand ($10,000.00) Dollars as administratrix of the estate of Andrew Gyenes for the support, care and education of Elizabeth Gyenes and Andrew Gyenes, his surviving children.

The Attorney General has filed a motion to dismiss the case, claiming respondent is not liable under the Doctrine of *Respondeat Superior* for the negligence of its servants and agents. He further contends on behalf of respondent that no award should be allowed under the doctrine of 'equity and good conscience' or 'social justice.' In answer to this, claimants contend that time after time where no legal liability on the part of the State for damages exists that awards have been made as a matter of equity and good conscience. This court as now constituted has reached the conclusion that it has no authority under the provisions of the Court of Claims Act to allow any claim solely on what is known as the doctrine of 'equity and good conscience.' This view is fully set forth in the case of *Crabtree* vs. *State,* 7 C. C. R. 207 and in numerous other cases appearing in the subsequent reports of this court.

Claimants contend however, that the facts in this case distinguish it from the other cases in which the doctrine of

'equity and good conscience' have been invoked, for the reason that the legislature, pursuant to the provisions of Section 11 of Article 20 of the *Military and Naval Code* have deprived them of any right of action against Corporal Myers and that unless this court takes cognizance of the claim, Andrew Gyenes, the deceased, would have been deprived of his life, and claimants would be deprived of their property and right to support, without due process of law, contrary to the Constitution. This Section (*Hurd's Rev. Statute* 1933, Ch. 129) provides in part as follows:

"Should any member of the National Guard—while in the discharge of his duty on active service in pursuance of orders from a superior authority, take life, or injure any person or persons or property in such discharge of his duty, the act or acts upon the part of such enlisted man—shall be deemed to be justifiable and lawful and he shall not be prosecuted therefor in any court or incur any civil liability by reason thereof."

By the provisions of this Act the legislature has expressly exempted Corporal Myers from any liability to the claimants in this case. At the time he shot Andrew Gyenes, Corporal Myers was in fact merely acting as a Peace-Officer, engaged in aiding the Sheriff of Christian County to maintain order. Were it not for the fact that he was an enlisted member of the National Guard in the discharge of his duties on active service pursuant to orders from a superior authority, he and his bondsman would have been subject to civil suit for the unwarranted killing of deceased. Under existing statutes the Civil Courts are not open to claimants for such purpose.

One of the first objects of Government is to protect the life, liberty and property of its citizens to the end that a Constitutional Government may exist. The Constitution of Illinois is the organic law of this State, and its bill of rights should be accepted as an imperative voice when considering the relationship and dealings between the civilian citizenship and the military power of the State.

The Constitution of the State of Illinois in the bill of rights provides:

"Section 2, Article II. No person shall be deprived of life, liberty or property without due process of law.

"Section 6, Article II. The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause etc."

"Section 15. The military shall be in strict subordination to the civil power."

The provisions above stated cannot be abrogated by statute nor legally violated by the militia or any court or citizen of the State. No fair minded citizen or student of our form of Government can rightly contend that it is in accordance with the spirit of these provisions to permit a member of the National Guard while engaged in the performance of his duties, not in a zone where martial law has been declared, but acting only as a Peace-Officer and as an aid to the civilian authority in maintaining order, to arrogantly, wantonly and without process and without any charge of crime having been legally preferred against a citizen, and where no violation of law has been committed in the presence of such militiamen, shoot and kill such citizen on private property while such citizen is in the peace of the people.

In the case of *Johnson* vs. *Jones, et. al.* 44 Ill. 142 the court expresses itself in this regard in the following language:

"The cardinal object of our Constitution, as it is the end of all good government, is to secure the people in their right to life, liberty and property. The more certainly to attain this end, the framers of our Constitution not only proclaimed certain great principles in the bill of rights, but they distributed governmental power into three distinct departments, each of which, while acting in its proper sphere, was designed to be independent of the others. To the legislative department it belongs to declare the causes for which the liberty of a citizen may be taken from him, to the judicial department to determine the existence of such causes in any given case, and to the executive to enforce the sentence of the court. If a citizen can be arrested, except upon a charge of violated law, and for the purpose of taking him before some judicial tribunal for investigation, then it is plain that the executive department has usurped the functions of the other two, and the whole theory of our government, so far as it relates to the protection of private rights, is overthrown."

Corporal Myers had no right or authority to make the attempted arrest or commit the wilful and deliberate act of shooting Andrew Gyenes. Martial law had not been declared; no proclamation suspending habeas corpus in the State of Illinois or Christian County had been issued; the civil law was still in full force and effect and it was as improper to make the attempted arrest without a warrant, under all the facts appearing in this record as it would have been to have visited upon Andrew Gyenes a trial by court martial instead of according to him a Civil Court hearing. As stated in *Johnson* vs. *Jones, supra,* "Military law, as distinguished from martial law, consists of the rules prescribed for the

government and discipline of troops, which applies only to persons in the Military or Naval service of the government; whereas martial law, when once established, applies alike to citizen and soldier.''

A military court martial has seen fit to visit no penalty upon Corporal Myers for the killing of Andrew Gyenes but regardless of whether he was or was not held responsible to the Military Court we do not believe that the State of Illinois can justify a dismissal of this claim and in effect say to the world that although no martial law has been declared, the Militia of the State may wantonly shoot down and kill one of its citizens then in the peace of the people and that the State would disavow all responsibility therefor. By statute, as a measure of proper public policy, the State has closed the door of the Civil Courts to claimants herein. While the killing of Andrew Gyenes as disclosed by the record herein seems unprecedented, yet we must believe that it is such a cause as was included in the minds of the Legislators of Illinois when they enacted the law creating the Court of Claims, and provided that among other things it should have power ''To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State, as a Sovereign Commonwealth, should, in equity and good conscience, discharge and pay.'' (Sec. 6, Par. 4, *Court of Claims Act.*)

For the State to deny such redress as it can offer to the widow and children of Andrew Gyenes for the latter's death under the circumstances disclosed in this record would not be in keeping we believe with our constitutional precepts and the law. We believe an award to be legally justified.

At the time of his death Andrew Gyenes was survived by his widow and three children, one of whom was nine years of age and the others over sixteen year of age. He was forty-five years of age and a coal-miner by occupation.

An award of Four Thousand Five Hundred ($4,500.00) Dollars is justified under the record.

It is Therefore Ordered that an award is hereby recommended in favor of Julia Gyenes as administratrix and as surviving widow of Andrew Gyenes, deceased, in the sum of Four Thousand Five Hundred ($4,500.00) Dollars.

CHIEF JUSTICE HOLLERICH dissenting:—

I cannot concur in the majority opinion.

Claimant contends that she is entitled to an award on the following grounds:

1) Equity and good conscience.

2) For the reason that she was deprived of her property without due process of law.

By the provisions of Section 11 of Article 20 of the Military and Naval Code of this State, Corporal Myers was relieved of all civil liability for the killing of Andrew Gyenes. In the absence of such enactment, the personal representative of said decedent would have been entitled to maintain an action against Corporal Myers under the "Injuries Act" of this State, for wrongfully causing the death of said decedent. Claimant takes the position that the Legislature in enacting Section 11 of Article 20 of the Military and Naval Code, deprived her and her children of a right of action which otherwise could have been maintained under the "Injuries Act", and that therefore she has been deprived of her property without due process of law, in violation of Section 2 of Article 2 of the Constitution of this State.

The majority opinion recognizes that claimant has no right to an award on the grounds of equity and good conscience, but holds that she was deprived of her property without due process of law, in violation of the aforementioned constitutional provision.

The constitutionality of the provisions of Section 11 of Article 20 of the Military and Naval Code has not been raised in this case, and that question is not now before the court.

The sole question for determination is whether the claimant has been deprived of her property without due process of law, within the meaning of those words as used in the Constitution. Does the deprivation of the right of action which the personal representative of said decedent otherwise might have maintained, constitute the taking of property, within the meaning of the constitutional provision? In other words, does the right of action which is given under the provisions of the "Injuries Act" constitute "property" within the meaning of that word as used in the Constitution?

At common law, no right of action existed for the recovery of damages for negligent injury resulting in the death

of the person injured. *Dougherty* vs. *American-McKenna Co.,* 255 Ill. 369; *Mississippi River Power Co.* vs. *Ind. Com.,* 289 Ill. 353; *Sims* vs. *Moline,* 222 Ill. App. 540.

In the case of *Keeran* vs. *Peoria, Bloomington and Champaign Traction Co.,* 277 Ill. 413, our Supreme Court, in passing upon the constitutionality of Sections 6 and 29 of the Workmen's Compensation Act of this State, used the following language:

"No right to compensation for an injury resulting in death existed at common law. Such right was given by statute, and being wholly statutory, is subject to legislative control. It may be given upon such terms and to such extent as the Legislature sees fit, and may be taken away or limited, in its discretion."

In the case of *Cones* vs. *Fisher,* 286 Ill. 606, the court, in considering a similar question, after referring to the Keeran case and other cases, used the following language:

"Neither an employee, his personal representative nor next of kin has any vested right to recover damages for personal injuries to the employee that the Legislature could not at any time do away with by a public enactment."

As previously stated, no right of action existed at common law for the recovery of damages for negligent injury resulting in the death of the person injured. The right to recover damages in such case depends wholly upon the provisions of the "Injuries Act" of this State. The Legislature having created the right, has equal authority to abolish the same, as no one has a vested right therein. Consequently, if such right of action is abolished, there is no deprivation of property within the meaning of such words as used in the Constitution. The law in this regard is set forth in 6 R. C. L. p. 309, sec. 296, as follows:

"There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal, nor vested right in the omission to legislate on a particular subject."

In considering a similar question our Supreme Court, in the case of *Arnold & Murdock Co.* vs. *Ind. Com.,* 314 Ill. 251, said:

"No one has a vested right in a public law, but the Legislature may repeal or amend all legislative acts not in the nature of contracts or private grants."

From a consideration of the foregoing authorities, it appears to me that there was, in this case, no deprivation of

property within the meaning of such words as used in the Constitution.

Furthermore, the question of the liability of the State for damages resulting from negligent acts or conduct on the part of enlisted men or officers in the military service of this State, has been before this court in numerous cases. Claimant has cited two of such cases in which awards were allowed, to wit: *Hanson, et al.* vs. *State,* 6 C. C. R. 548, and *Wood* vs. *State,* 7 C. C. R. 161. In each of such cases, however, it was specifically stated that there was no legal liability on the part of the State, but an award was made on the grounds of equity and good conscience. As stated in the majority opinion, this court as now constituted, has repeatedly held that it has no authority to allow an award on the grounds of equity and good conscience unless there is a legal liability on the part of the State to pay such award.

In each of the following cases an award was sought on the ground that the State was liable for the negligent acts or conduct on the part of enlisted men or officers in the military service, and in each case award was denied on the ground that there is no liability on the part of the State in such cases. *Viola Ogan* vs. *State,* 4 C. C. R. 346; *Kershaw* vs. *State,* 6 C. C. R. 387; *Peterson* vs. *State,* 6 C. C. R. 578; *Winnebago County Forest Preserve District* vs. *State,* 7 C. C. R. 95; and *Peterson* vs. *State,* 8 C. C. R. 9.

There being no legal liability on the part of the State in this case, I feel that we have no jurisdiction to allow an award.